UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DAWN REYNOLDS,                                Civ. No. 6:11-cv-6087-AA

             Plaintiff,                            OPINION AND ORDER

      v.

CITY OF EUGENE, an Oregon
municipal corporation, and
MARK GISSINER, an individual,

             Defendants.
_____

AIKEN, Chief Judge:

      Plaintiff filed suit in state court alleging First Amendment
and whistleblower retaliation and common law tort claims arising
from the termination of her employment as Deputy Police Auditor for
the City of Eugene. Defendants removed the action to federal court
and successfully obtained dismissal of certain claims. See doc. 13.
Defendants now move for summary judgment on plaintiff's remaining
claims of First Amendment retaliation under 42 U.S.C. § 1983,

1    - OPINION AND ORDER

whistleblower retaliation under Or. Rev. Stat. §§ 659A.203 and 659A.199, and intentional interference with economic relations (IIER). Defendants' motion is granted as to plaintiff's First Amendment and IIER claims, and plaintiff's whistleblower claims are remanded to state court.

## BACKGROUND

In late 2006, the City of Eugene (the City) passed an ordinance establishing the Office of the Police Auditor (PA Office). The purpose of the PA Office is "to provide an independent location to lodge complaints involving police employees, monitor internal investigations to ensure objective, thorough and high quality investigations, and develop recommendations to improve police services." Gissiner Decl. Ex. 1 at 1-2. To these ends, the PA Office receives and processes police misconduct complaints; develops and maintains operating procedures for reviewing complaints and monitoring investigations; acts as a liaison to the Civilian Review Board (CRB)[1]; identifies systemic changes to improve police services; and provides reports to the City Council and CRB. Id. Ex. 1 at 4.

---

[1]The CRB is a volunteer citizen group that provides feedback on investigations of alleged police misconduct, with the goal of "increas[ing] the transparency of, and public confidence in, the police complaint process." Snyder Decl. Ex. 11 at 2. The CRB "evaluate[s] the work of the independent police auditor, and may review completed complaint investigations involving sworn police employees to provide comment, from a civilian perspective, about whether the complaint was handled fairly and with due diligence." Id.

In May 2008, then-Police Auditor (PA) Christina Beamud hired plaintiff for the position of Deputy PA. In August 2008, Beamud resigned and plaintiff was named Interim PA.

Prior to and during her tenure as Interim PA, conflicts arose between plaintiff, the Eugene Police Department (EPD), the former Chief of Police, and several City Council members. Pl.'s Am. Opp'n Mem. at 8-14 (doc. 63); Reynolds Decl. Ex. 12-13; Snyder Decl. Ex. 6 at 7-8, Ex. 10 (under seal), Ex. 28 (under seal), Ex. 41; Snyder Suppl. Decl. Ex. B at 7-8. These conflicts generally stemmed from the EPD's perception that plaintiff was biased against the EPD and acted as an advocate for citizen complainants rather than as an objective police oversight authority. Snyder Decl. Ex. 4 at 3-4.[2] In turn, plaintiff complained that the former Police Chief and the EPD unfairly and improperly restricted her access to EPD offices and withheld investigative documents in violation of the PA ordinance. Matthews Decl. Ex. 1 at 10-12; Snyder Decl. Exs. 27, 36.

Ultimately, in March or April of 2009, the Eugene City Council - the supervising body of the PA - placed plaintiff on administrative leave due to an incident in which plaintiff allegedly disclosed confidential information to a complainant's attorney. Matthews Decl. Ex. 1 at 9; Snyder Suppl. Decl. Ex. C.

_____

[2]These conflicts and perceptions, and others relating to plaintiff's performance of her PA duties, continued during Gissiner's tenure as PA. Matthews Decl. Ex. 4 at 5; Reynolds Decl. Ex. 21; Snyder Decl. Exs. 14, 16, 26, 29-32, 33 (under seal), 34-35.

3    - OPINION AND ORDER

Plaintiff was reinstated in April 2009, with certain restrictions and requirements imposed on plaintiff's performance of her duties. Snyder Decl. Ex. 45 (under seal); Matthews Decl. Ex. 1 at 9.

In June 2009, the City hired defendant Mark Gissiner as PA, and plaintiff returned to her previous position as Deputy PA. After Gissiner was hired, plaintiff contends that he restricted her involvement in police misconduct investigations and rarely interacted with her. Plaintiff also alleges that EPD employees and certain City Councilors sought to influence Gissiner's relationship with plaintiff because of her prior complaints and her strained relationship with the EPD.[3] As a result, plaintiff maintains that the PA Office became less collegial, and she felt increasingly isolated and scrutinized. Plaintiff also asserts that Gissiner was too closely aligned with the EPD and altered PA Office policies to minimize reports of police misconduct. According to plaintiff, Gissiner was aware of her past disputes with EPD employees and told her that she needed to be "rehabilitated" with the EPD and its officers. See Snyder Decl. Ex. 6 at 7.

Along with their differing philosophies about the role and management of the PA Office, Gissiner and plaintiff had differences

---

[3]Plaintiff testified that she believed certain City Councilors did not support her application for PA and wanted her terminated. Snyder Decl. Ex. 6 at 6. However, plaintiff admitted that she did not know which City Councilors or EPD employees sought her termination, stating that it would be "conjecture" to guess. Id. Ex. 6 at 16-17.

4    - OPINION AND ORDER

of opinion on several issues, including plaintiff's interactions with complainants, the payment of plaintiff's attorney licensing dues, the classification of citizen complaints, retention of investigative files, and plaintiff's communications with and document production to other City offices or agencies. See Matthews Decl. Ex. 1 at 43-51; Reynolds Decl. Ex. 20; Reynolds Suppl. Decl. Ex. 1; Snyder Decl. Ex. 6 at 7-8, 10-15, Exs. 20-25, 29. Plaintiff communicated some of her concerns about Gissiner and his management of the PA Office to City Councilors and CRB members. Snyder Decl. Ex. 1 at 3-4; Brissenden Decl. ¶¶ 7-8; Wilkinson Decl. ¶¶ 7-8, 11-12. Plaintiff also contacted an Assistant United States Attorney (AUSA) about her belief that the "constitutional rights of individuals were being violated by the EPD officers." Matthews Decl. Ex. 1 at 24.

On May 17, 2010, Gissiner placed plaintiff on administrative leave pending dismissal. Snyder Decl. Ex. 39.

On February 7, 2011, plaintiff filed suit in state court, and defendants removed the case to federal court. Plaintiff essentially alleges that Gissiner terminated her employment in retaliation for reporting misconduct committed by Gissiner and EPD officers.

STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

If the moving party meets its burden to establish the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which raise a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

When determining genuine issues of material fact, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. See Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). While circumstantial evidence may create a genuine issue of material fact, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" does not. Fed. Trade Comm'n v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997); see also Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.").

## DISCUSSION

As an initial matter, the court clarifies the relevant issues in this case. At issue is whether Gissiner terminated plaintiff in retaliation for reporting or disclosing misconduct or potential violations of law. Not at issue are whether the former and current Police Chief and certain EPD employees resented the PA Office, former PA Beamud, or plaintiff herself; whether Gissiner's management style and philosophy are less effective or less

6   - OPINION AND ORDER

collegial than Beamud's or plaintiff's; or whether Gissiner, the EPD, and/or City Councilors genuinely are committed to monitoring and investigating complaints of police misconduct. While such background information may give context to plaintiff's claims, these issues simply are not critical to the resolution of defendants' motion and are better addressed by the relevant stakeholders and policymakers than by this court. Therefore, the court's discussion is limited to the elements of plaintiff's claims and the evidence presented in support of them.

A. First Amendment Retaliation

Plaintiff alleges that Gissiner fired her to placate EPD employees and in retaliation for plaintiff's reports of misconduct by Gissiner and EPD officers.

To succeed on her First Amendment retaliation claim, plaintiff must show that: 1) she spoke on a matter of public concern; 2) she spoke as a private citizen and not as a public employee; and 3) her protected speech was a substantial or motivating factor in the adverse employment action. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). If plaintiff establishes these elements, the court then considers whether Gissiner "had an adequate justification" for restricting plaintiff's speech, and whether Gissiner would have taken the adverse employment action in the absence of her protected speech. Id. at 1071-72 (citation omitted).

Plaintiff alleges that she reported the following complaints

to Gissner, City Councilors, the Mayor and CRB members and argues that each constitutes protected speech under the First Amendment:[4]

1. In July 2009, plaintiff reported to City Council members and Gissiner that most CRB members had not been invited to a public forum on police and community issues. Although the forum was not hosted by the PA Office, plaintiff believed that excluding CRB members from this forum was a "slap in the face" and did not further the CRB's goal of transparency in police misconduct investigations. Snyder Decl. Ex. 6 at 19.

2. From July 2009 through May 2010, plaintiff reported to the Mayor and CRB members that Gissiner was improperly classifying citizen complaints of police misconduct. Specifically, plaintiff asserted that Gissiner was classifying police misconduct complaints as mere "service complaints," and the complaints were investigated inadequately as a result.[5] See Snyder Decl. Ex. 6 at 20. Plaintiff

---

[4]In her opposition brief, plaintiff also describes various complaints she raised about the EPD and the former Police Chief prior to Gissiner's tenure. See Pl.'s Am. Opp'n Mem. at 8-14. Plaintiff contends that EPD employees had informed Gissiner of her prior complaints and attempted to turn Gissiner against her. However, the only evidence cited in support of this assertion is plaintiff's own declaration. Id. at 15. Regardless, defendants do not dispute that Gissiner knew plaintiff had a strained relationship with EPD employees and thought her relationship with them needed to be "rehabilitated"; even so, this knowledge alone cannot support plaintiff's First Amendment claim. Snyder Decl. Ex. 6 at 7. Therefore, I limit my discussion to the speech specifically identified by plaintiff, all of which occurred after Gissiner was hired. Pl.'s Amended Opp'n Mem. at 17-21.

[5]Service complaints are those alleging "minor misconduct involving courtesy, communications, and minor rules violations."

8    - OPINION AND ORDER

also told Gissiner that she thought some complaints had been "low-balled" and misclassified. Snyder Decl. Ex. 12 at 1.

3. Sometime in March or April of 2010, plaintiff contacted an Assistant United States Attorney (AUSA) to report a perceived pattern of citizen complaints alleging constitutional violations by EPD officers, including property seizures, excessive uses of force, and wrongful arrests. Plaintiff contacted the AUSA with the hope that the federal government "would do some more digging" into such allegations as the "federal government can do an investigation into a police department." Matthews Decl. Ex. 1 at 25. Plaintiff did not notify Gissiner about her communications with the AUSA, though she claims to have informed several City Councilors and CRB members.

4. In May 2010 (and possibly earlier), plaintiff reported to Gissiner, City Council members, and the CRB president that electronic documents were being "unlinked" from the electronic files of EPD Internal Affairs (IA) and could no longer be accessed by the PA Office. E.g. Gissiner Decl. Ex. 2. Plaintiff believed that the PA ordinance required complete access to IA files.

5. In May 2010, plaintiff contacted Gissiner about his recent authorization to shred older case file materials. Gissiner Decl. Ex. 2. Plaintiff states that she also reported to City Council members and the CRB president that Gissiner had authorized the shredding of PA investigative records. Plaintiff was concerned that

---

Gissiner Decl. Ex. 1 at 6.

shredding the records violated public records law, because she believed some of the documents were not merely duplicates, as Gissiner had asserted, but original PA files that must be retained. Snyder Decl. Ex. 3 at 9 (Gissiner testimony that he authorized staff to shred duplicate IA case files, not original PA files); Snyder Supp. Decl. Ex. B. at 10-11.

6. In May 2010, plaintiff told Gissiner about an "off-the-record" complaint she received from a citizen alleging that EPD officers had encouraged him to initiate an altercation so that officers could "practice" using their tasers. Matthews Decl. Ex. 1 at 26-27, 49. This incident allegedly occurred a couple of years before the complaint was made.

Plaintiff contends that her complaints and reports necessarily involved matters of public concern, while defendants characterize her complaints as internal, work-related grievances. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah Cnty., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). However, "speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy,

10   - OPINION AND ORDER

705 F.2d 1110, 1114 (9th Cir. 1983)).

With the exception of plaintiff's reports to the AUSA, plaintiff's complaints arguably fall into the category of work-related grievances. However, the issue is complicated by the fact that plaintiff's employment involved the oversight of police misconduct complaints - clearly an issue of public concern - and some of her complaints are relevant to the "public's evaluation" of the PA Office's performance. I need not decide this issue, however, as plaintiff fails to meet the remaining elements of First Amendment retaliation.

Plaintiff's complaints are not protected by the First Amendment unless they were made in her capacity as a private citizen and not as a public employee. Garcetti v. Ceballos, 547 U.S. 410, 421-22 (2006). Generally, statements are made as a public citizen "if the speaker had no official duty to make the questioned statements" or "the speech was not the product of perform[ing] the tasks [the employee] was paid to perform." Posey v. Lake Pend Oreille Sch. Dist., 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) (internal quotation marks and citations omitted). However, speech made pursuant to a public employee's "official duties" is generally not protected. Ceballos, 547 U.S. at 421; Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006). "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a

private citizen." Ceballos, 547 U.S. at 421-22. Ultimately, "the plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen." Eng, 552 F.3d at 1071.

Here, plaintiff fails to establish that her complaints about CRB members, the classification of citizen complaints, unlinked IA documents, document retention or shredding, and the "off-the-record" allegation were asserted in her capacity as a private citizen. Instead, the evidence of record establishes that plaintiff voiced her complaints pursuant to her official duties as Deputy PA.

First, plaintiff testified that her complaint about excluding CRB members was related to the implementation of the PA ordinance and the CRB's role in evaluating police misconduct investigations. Matthews Decl. Ex. 1 at 18-19. Plaintiff also testified that she made the complaint in her capacity as Deputy PA, and plaintiff's duties included acting as a liaison to the CRB. Id.; Gissiner Decl. Ex. 1 at 4. Thus, this complaint was raised pursuant to plaintiff's official duties.

Second, Gissiner and plaintiff exchanged email communications regarding the classification of complaints and his preference that the PA Office "be more specific about how we categorize complaints so that internal is not overburdened with the services complaints and can focus more on the serious allegations." Snyder Decl. Ex. 12. Plaintiff responded with her concern that "a couple of complaints [] were more serious that the category they were put

into." Id.; see also Matthews Decl. Ex. 1 at 19-21. Notably, plaintiff's duties included processing misconduct reports, and developing and maintaining operating procedures for reviewing complaints and monitoring investigations. Gissiner Decl. Ex. 1 at 4. Given this context, plaintiff voiced her misgivings about the classification of complaints as a product of her official duties.

Third, plaintiff informed Gissiner that she was unable to access documents in closed IA electronic files that were previously "linked" to such files. Snyder Decl. Ex. 25 at 2. Gissiner responded, "With regard to [IA files], my understanding of the system is that once cases are closed, they are locked. We do not manage the data base; the data base is managed by the Police Department." Id. Ex. 25 at 1. Plaintiff nonetheless believed that IA files should be completely accessible by the PA Office to comply with "the spirit" of the PA ordinance, and she expressed frustration that she must ask someone to "unlock" those documents. Matthews Decl. Ex. 1 at 23; Snyder Decl. Ex. 25 at 1. Plaintiff also raised this issue with EPD IA personnel. Reynolds Decl. Ex. 21. In this context, plaintiff's concern was raised as an issue of document accessibility, not as a complaint of misconduct. Moreover, plaintiff's duties included developing procedures "to coordinate the flow of information and communication between" the PA Office and the EPD. Gissiner Decl. Ex. 1 at 8. Thus, plaintiff raised any concern over "unlinked" documents in her capacity as the Deputy PA.

Fourth, the evidence shows that plaintiff raised her concern about document shredding in the context of the PA Office's compliance with record retention laws. Snyder Decl. Ex. 25; Snyder Suppl Dec. Ex. B at 9-10. Plaintiff told Gissiner she was unaware that the PA Office was authorized to destroy documents and, as a government agency, "we're under an obligation to retain files." Snyder Decl. Ex. 25 at 2. Gissiner responded by citing the PA ordinance provision requiring the PA Office to "return all case file materials to internal affairs for retention." Id. Ex. 25 at 1. He further explained that "in instances where [IA] ha[s] the case files and we have copies . . . those older case file materials can be shredded." Id. Gissiner also clarified that he asked Vicki, a PA Office employee, to return or shred only duplicate documents "sent to us from [IA]. . . not something generated in-house." Id. Plaintiff nonetheless complained to a City Councilor and CRB members that Gissiner authorized the destruction of PA documents.[6]

Thus, the evidence of record establishes that plaintiff raised the document-shredding issue pursuant to her duties as Deputy PA. The fact that plaintiff may have disagreed with Gissiner's understanding of what documents were shredded and later discussed this issue with City Council or CRB members does not transform the capacity in which she voiced her complaint.

---

[6]Gissiner also testified that he did not direct Vicki to shred PA files, and if she did so, she misinterpreted his instructions. Snyder Decl. Ex. 3 at 9.

Fifth, plaintiff reported the "off-the-record" complaint of police misconduct to Gissiner as part and parcel of her duty to document complaints of police misconduct. Gissiner Decl. Ex. 1 at 5. Plaintiff testified that she informed Gissiner of the complaint, knowing that the PA Office could not act on it (because of the time that had elapsed), so that Gissiner could raise the issue with the police chief. Matthews Decl. Ex. 1 at 27 ("So I figured it was in [Gissiner's] lap. He could take it to the chief. They could talk about it. Maybe they wanted to do something internally."). Given that plaintiff's duties primarily involved receiving, reviewing and processing citizen complaints, she reported this complaint to Gissiner in her capacity as a public employee.

Finally, to the extent plaintiff raised any of these concerns with City Councilors or CRB members, plaintiff testified that her duties included reporting concerns about compliance with the PA ordinance to the City Council and CRB. Matthews Decl. Ex. 1 at 6-7. Thus, these communications were a product of her official duties.[7]

Nonetheless, plaintiff argues that Gissiner had curtailed her responsibilities and forbidden her to speak with anyone outside of

---

[7]Regardless, plaintiff presents no evidence that Gissiner knew of her complaints to the Mayor, City Councilors, or CRB members. None of these individuals have asserted that they informed Gissiner of plaintiff's complaints, and no evidence creates an inference that Gissiner knew of these complaints. See e.g., Snyder Decl. Ex. 1 at 3-4. Thus, plaintiff cannot establish a causal connection with respect to these complaints, even if they were voiced in her capacity as a private citizen rather than a public employee.

the PA Office in her role as Deputy PA. Plaintiff relies on the several emails from Gissiner directing her to refrain from making statements or distributing documents on behalf of the PA office.

In July 2009, Gissiner emailed plaintiff in response to recommendations she made to the CRB about which investigations they should review. Gissiner stated: "As Auditor, I need to be the point person for this type of item. . . . [W]e should review the cases together before submitting our recommendations to the Board. Again, official correspondence with the Board needs to be managed by the Auditor at this point." Reynolds Decl. Ex. 18. In September 2009, Gissiner sent another email to plaintiff stating that "[a]ny distribution of materials, correspondence, etc. to CRB or others as coming from the auditor's office need to come through me, as I have said on more than one occasion." Reynolds Decl. Ex. 20 at 2.[8] In May 2010, Gissiner reiterated that his prior directive remained in place, "primarily [with respect to] the distribution of materials that reasonable people would conclude came from the Auditor – and

------

[8]In December 2009, Gissiner also sent a memorandum to the Police Commission Chair regarding this issue:

> It has been brought to my attention that there seems to be some confusion within the Police Department about who states the official position of the Police Auditor with regard to Police Department related issues. . . . [P]lease be advised that I represent the only official position of the Police Auditor's Office, unless I explicitly advise you as Chair that someone is speaking on my behalf.

Reynolds Decl. Ex. 17.

[the] representation of the official position of the Auditor's office in key decision making." Id.; see also Snyder Decl. Ex. 23 at 3. Gissiner later clarified that his directive referred to plaintiff's communications about "official business" rather than her personal observations. Reynolds Suppl. Decl. Ex. 1 at 2-3.

Plaintiff also alleges that Gissiner informed her that no one wanted to hear her complaints, and that she should "keep [her] mouth shut."[9] Snyder Decl. Ex. 6 at 17, Ex. 23 at 1; Reynolds Suppl. Decl. Ex. 1. Thus, plaintiff argues that because she was prohibited from raising any complaints in her official capacity, she necessarily reported them as a private citizen. I disagree.

Gissiner's directive - to refrain from making comments or distributing documents that could be perceived as representing the "official" position of the PA Office - does not transform plaintiff's complaints into protected speech when such complaints were asserted pursuant to the performance of her official duties. Regardless of how Gissiner defined plaintiff's role and her communications, her complaints were a product of her official duties and she raised them in her capacity as a public employee.

That said, I agree with plaintiff that her communications with the AUSA were not made pursuant to her official duties. No evidence

---

[9]Gissiner disputes this allegation and notes that an email exchange demonstrates that any statement to "keep your mouth shut" was advised as a response to criticism leveled at the PA Office, not in the context of plaintiff's complaints of alleged misconduct. See Reynolds Supp. Decl. Ex. 1 at 1.

suggests that plaintiff or the PA Office was obligated to report
potential constitutional violations by EPD officers to federal
authorities. Ceballos, 547 U.S. at 421-22; Freitag, 468 F.3d at
545. Nonetheless, plaintiff fails to establish that Gissiner knew
of her discussions with the AUSA to show that such protected speech
was a substantial or motivating factor in her termination. Eng, 522
F.3d at 1071.

Although circumstantial evidence can be sufficient to infer
causation, plaintiff must produce evidence that: 1) Gissiner knew
of her protected speech; 2) her protected speech and termination
were close in time to permit an inference of retaliatory motive;
and 3) Gissiner either expressed opposition to the protected speech
or gave "false and pretextual" explanations for plaintiff's
termination. See Keyser v. Sacramento City Unified School Dist.,
265 F.3d 741, 750-51 (9th Cir. 2001).

However, plaintiff fails to present any evidence suggesting
that Gissiner knew of her complaints to the AUSA; in fact,
plaintiff testified that she did not know whether Gissiner had
knowledge of these communications. See Matthews Decl. Ex. 1 at 26;
Snyder Decl. Ex. 6 at 22.[10] While plaintiff allegedly told one or

---

[10]Plaintiff argues that Gissiner's email to the City
Attorney raises an inference that Gissiner knew about plaintiff's
complaints to people outside the PA Office. Gissiner asked for
the City Attorney's opinion on the document shredding/retention
issue raised by plaintiff, adding: "Since I'm sure she's going to
report me to someone." Gissner Decl. Ex. 3 at 1. The fact that
Gissiner may have thought plaintiff was disposed to reporting him

two City Councilors and a CRB member that she reported potential constitutional violations to the AUSA, plaintiff presents no evidence that any of these individuals informed Gissiner. Id. Given that Gissiner had no knowledge of plaintiff's complaint to the AUSA, plaintiff fails to raise a genuine issue of material fact that her speech was a substantial or motivating factor in Gissiner's decision to terminate her employment.

In sum, plaintiff's complaints were reported in her capacity as Deputy PA, with the exception of her complaint to the AUSA. However, plaintiff presents no evidence that Gissiner knew of this complaint to establish a causal connection between her complaint and her termination. Therefore, summary judgment is granted as to plaintiff's First Amendment claim.

B. Intentional Interference with Economic Relations

Plaintiff also asserts a claim of intentional interference with economic relations against Gissiner. To succeed on this claim, plaintiff must show:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

---

does not create an inference that Gissiner knew about plaintiff's specific complaints to the AUSA, or to City Councilors or the CRB, for that matter.

<u>McGanty v. Staudenraus</u> 321 Or. 532, 535, 901 P.2d 841 (1995). The relevant issues are whether Gissiner was a third party and whether he acted through improper means or for an improper purpose.

"[W]hether a supervisor or other employee is a third party to a plaintiff's contract with the same employer depends on whether that employee was acting within the scope of his or her employment." <u>Kaelon v. USF Reddaway, Inc.</u>, 180 Or. App. 89, 96, 42 P.3d 344 (2002). This test is whether: "(1) the act occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least partially, by a purpose to serve the employer; and (3) the act is of a kind that the employee was hired to perform." <u>Id.</u>

Here, Gissiner was authorized to terminate plaintiff and had sole supervisory authority over her. Further, plaintiff fails to create a genuine issue of material fact as to whether Gissiner fired her solely for his own personal benefit. To the contrary, plaintiff repeatedly argues and insinuates that Gissiner terminated plaintiff "to satisfy various City and EPD employees who wanted to get rid of [plaintiff] in retaliation for her whistleblowing activity." Pl.'s Opp'n Mem. at 21; <u>see also</u> Matthews Decl. Ex. 1 at 16 (plaintiff's testimony that "the City" retaliated against her, and that City Councilors and EPD officers "would have been happy to see me go"). Therefore, plaintiff's own theory of the case rests on her assertion that Gissiner terminated her for the "benefit" or at

the behest of City officials and EPD employees. <u>See</u> <u>Sims v.</u>
<u>Software Solutions Unlimited, Inc.</u>, 148 Or. App. 358, 364-65, 939
P.2d 654 (1997).

Moreover, plaintiff presents no evidence that Gissiner
terminated plaintiff for his own purposes. Plaintiff cites two
instances of alleged "misconduct" involving Gissiner personally -
the misclassification of complaints and the authorization to shred
documents. However, plaintiff points to no conduct or statement of
Gissiner suggesting that he sought to "cover up" this alleged
misconduct by terminating plaintiff; instead, she relies on her own
unsupported and conclusory allegations. Pl's Am. Opp'n Mem. at 33-
34. Such allegations do not create a genuine issue of fact.

At most, plaintiff's evidence could support an inference that
Gissiner had a "vendetta" against plaintiff and sought to benefit
the EPD and the PA Office "by terminating the employment of an
at-will employee who was deemed a 'troublemaker.'" <u>Sims</u>, 148 Or.
App. at 365, 939 P.2d 654. However, even if such a "vendetta"
existed, it does not support an IIER claim. <u>Id.</u> Accordingly,
summary judgment is granted.

<u>C. Whistleblower Retaliation</u>

Finally, plaintiff asserts two whistleblower claims against
the City under Or. Rev. Stat. §§ 659A.203 and 659A.199. Defendants
move for summary judgment on grounds that plaintiff did not make a
protected "disclosure" and could not have been terminated in

retaliation for protected activity. Further, defendants argue that § 659A.199 is inapplicable, as it protects employees in the private sector rather than the public sector.

Under § 659A.203, plaintiff must show that she engaged in protected activity by disclosing information she "reasonably believed" was a violation of "any federal or state law, rule or regulation by the state, agency or political subdivision." Or. Rev. Stat. § 659A.203(1)(b)(A); Bjurstrom v. Or. Lottery, 202 Or. App. 162, 168, 120 P.3d 1235 (2005). Defendants argue that plaintiff's complaints are not "disclosures" within the meaning of § 659A.203 because they pertained to internal office management or were disclosed only to Gissiner, the alleged wrongdoer. See Clarke v. Multnomah Cnty., 2007 WL 915175, at *14-16 (D. Or. Mar. 23, 2007).

I find that plaintiff's complaints regarding unlinked IA files and CRB members' exclusion are not protected "disclosures" under § 659A.203. While plaintiff testified that files may not be "complete" if certain documents were "unlinked" and not readily accessible, plaintiff does not contend that documents in IA files were missing or destroyed. Matthews Decl. Ex. 1 at 23. Plaintiff's complaints are therefore akin to an internal document-keeping grievance rather than a protected "disclosure" of unlawful conduct.

Likewise, the exclusion of CRB members from a public meeting cannot be considered a disclosure in light of plaintiff's admission that such exclusion did not violate any law or ordinance. Snyder

Decl. Ex. 6 at 19. Further, even if plaintiff's complaints to the AUSA about constitutional violations and complaints to the Mayor and CRB about misclassified complaints were "disclosures," she cannot establish a causal connection between these complaints and her termination, given Gissiner's lack of knowledge about them.[11] Huber v. Or. Dep't of Educ., 235 Or. App. 230, 240-41, 230 P.3d 937 (2010) (plaintiff must present evidence that protected speech was a substantial factor in the employment decision).

Remaining are plaintiff's reports about document shredding and the "off-the-record" complaint of officer misconduct. Defendants argue that these complaints are not "disclosures," because plaintiff reported them only to Gissiner, the alleged wrongdoer.[12] However, plaintiff's report about the off-the-record complaint did not allege wrongdoing by Gissiner but by EPD officers who allegedly attempted to solicit a fight so they could use their tasers. Further, plaintiff's complaints regarding document shredding were raised in emails sent to others besides Gissiner; even if made to PA Office staff, disclosures made within an agency are protected under § 659A.203. Bjurstrom, 202 Or. App. at 171, 120 P.3d at 1235.

---

[11]Although plaintiff raised the issue of complaint classification to Gissiner, it was not in the context of a complaint of wrongdoing, but rather as a work-related concern. Snyder Decl. Ex. 12.

[12]Plaintiff must also show that her disclosures were based on a reasonable belief that a legal violation had occurred. Huber, 235 Or. App. at 239, 230 P.3d 937. Defendants do not raise this issue and I decline to do so sua sponte.

23   - OPINION AND ORDER

Moreover, I am not persuaded that the Oregon courts would adopt the analysis in Clarke, as it arguably conflicts with the Oregon Court of Appeals' discussion of the whistleblower statute in Bjurstrom. Id. at 169-71. Granted, Bjurstrom does not explicitly address disclosures to supervisors who are also the alleged wrongdoers. At the same time, Bjurstrom did not rely on the federal whistleblower statute when interpreting § 659A.203, the statute Clarke indirectly relied on in interpreting what constitutes a "disclosure" under the statute. See Clarke, 2007 WL 915175, at *14-16. Thus, I am reluctant to find that the Oregon whistleblower statute does not protect complaints of allegedly unlawful conduct when reported to a supervisor who is also the alleged wrongdoer.

Plaintiff also asserts a whistleblower claim under § 659A.199, which prohibits an employer from retaliating against an employee "for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation." Or. Rev. Stat. § 659A.199(1). Unlike § 659A.203, this statute does not require a "disclosure" based on a "reasonable belief" of wrongdoing. Defendants argue that § 659A.199 is intended to provide protection against retaliation to private sector employees and is therefore not applicable in this case.

I am inclined to agree with defendants that the Oregon Legislature did not intend to subject public employers to two

24   - OPINION AND ORDER

whistleblower statutes with differing bases of liability. However, the interpretation of a state statute is best left to a state court.

Accordingly, I exercise my discretion to decline supplemental jurisdiction and remand plaintiff's whistleblower claims to the state circuit court. A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, no Oregon court has resolved whether a "disclosure" must be reported to someone other than the alleged wrongdoer, and no Oregon court has held whether § 659A.199 applies to public employers. Further, this court is granting summary judgment on the claim over which it had original jurisdiction, and in such instances, the Ninth Circuit encourages district courts to "decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing Inc. v. Nat'l Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989). However, given that this case was removed to federal court, remand is appropriate.

25   - OPINION AND ORDER

CONCLUSION

Defendants' Motion for Summary Judgment (doc. 43) is GRANTED in part and DENIED in part. Defendant's motion for summary judgement is GRANTED as to plaintiff's First Amendment and IIER claims. Plaintiff's claims alleging whistleblower retaliation under Oregon law are HEREBY REMANDED to the Circuit Court for Lane County. The Clerk is directed to enter Judgment accordingly.

IT IS SO ORDERED.

Dated this 22nd day of March, 2013.


_____
Ann Aiken
United States District Judge